Perez-Sanchez v. U.S. Attorney General Good morning. We're ready to proceed when you are. Thank you, Your Honors, and may it please the Court, my name is Brad Bannas and I represent the petitioner, Mr. Darvin Perez-Sanchez, in this case. This Court should grant this petition and remand this case back to the Board of Immigration Appeals either with instructions to terminate for lack of jurisdiction or with instructions to reconsider the case consistent with an opinion that would say they interpret the nexus requirement for asylum too narrowly here. Your Honor, and for those reasons, we ask that you grant this petition. The first issue that is in front of the Court and the Court has asked some specific questions on is whether the immigration judge actually had jurisdiction over Mr. Perez's case because of the lack of a proper notice to appear under the statute. Now, I'm going to refer to the statutes here under their INA sections because they're 239 and 240 rather than the U.S. Code, which would be 1229 parenthetical A and 1229A, just hopefully for clarification processes. But the Court has asked three distinct questions on this issue. And I know the Court has done its research and this is now a well-litigated issue around the circuit courts. We've had a recent decision from the Fourth Circuit on this issue. That's right, just less than a week ago, Your Honor. And admittedly, all the courts in the circuit courts go against my position. Well, the – oh, okay, yeah, that's right. Yeah, yeah. Let me ask you a question, though, because none of them – none of them engage with the idea that – and I'm going to actually – all right, I'm going to use the paren – okay, U.S. Code sites – that none of them engage with the idea that the language of – or even consider it – the language of 1229 that says, under removal proceedings – the language of 1229 paren A, it says, under removal proceedings – or in removal proceedings under 1229 A, notice to appear blah, blah, blah, blah, blah, blah. So none of them consider the question that we have asked you in the first question that we distributed to the parties. So I wonder if you could address that for us. Yes, Your Honor. I think the answer is clear. It's unambiguous, and that's it. The language says an alien shall receive a written notice, and then in parentheticals, we're going to call that a notice to appear, and then it defines what must be in a notice to appear to be a, quote, notice to appear. I don't think there's any wiggle room around that. It's – the name of that statutory section is initiation of removal proceedings, and then we go down to the subsection, which talks about the notice to appear. And the other aspect of that statute is the structure, and subsection A defines what's in the notice to appear. The particular provision here is G1 and 2, and it's really important to see that the G1 and 2 are crucial to aliens who are facing removal proceedings, because if you notice, G1 is the requirement of time and place, and G2 is a requirement that the notice to appear tell the alien the consequences of missing that initial hearing. The consequences are very easy. You get ordered removed in absentia. That's it. If you don't show up, you get ordered removed. And then the remainder of the next section of the statute says – makes this – highlights the importance of this, saying that if the court decides to change that time and date, it must go through another personal service and proper way of getting it to them. And so to answer your question, Your Honor, I think it – I don't know where there would be ambiguity in that particular provision that says an alien shall receive a notice to appear for removal proceedings under 1229A. Okay. So assuming that you're right about that, does Pereira require that the notice to appear then include the time and place, even for purposes of removal proceedings, for our purposes, that is, as opposed to stop time, which was at issue there? Because, you know, as you know, the Pereira court said, we're just talking about the stop time provision. That's right. It does. But Pereira interprets 1229, says, well, we can't interpret it. It's unambiguous. This is definitional, and anything that doesn't meet all of these requirements is simply not a notice to appear. That's the antecedent holding reasoning rationale. It then applies that in the cancellation context. But even outside of the cancellation context, that holding is binding on this Court. And that holding is that 1229, paren a, is a definition of notice to appear that applies to any other sections that say it applies to it. And I would say it applies to any reference to a, quote, notice to appear. It's unambiguous. And we only have to decide for purposes of in removal hearings, though, under 1229a, in removal proceedings under 1229a, without the parentheses. Well, and I think going even a little bit more into the weeds, I think we have to decide whether that definition applies to the agency's own interpretation of 1229 and 1229a under the Regulation 8 CFR 103.14a, which says — But do we get to a regulation if the statutory language is clear? I mean, how do we get to the regulation, then? Well, I don't think the statutory language is clear on when jurisdiction vests in front of the immigration court. I don't think 1229 makes it clear, and I don't think 1229a makes it clear. And I think Congress intended to leave interpretive room there for good reason. And you see that reason in the notice of proposed rulemaking in 1992 when, at that point, the Department of Justice engaged in rulemaking to craft 103.14a, the jurisdiction vesting. But the agency can't — I mean, how can the agency dictate its own jurisdiction? That seems wrong to me. I agree with that, Your Honor, but I think it can dictate when jurisdiction vests, when it starts in immigration court. And there's good reason for this. How is that different from dictating its own jurisdiction? Well, I think — I don't think the regulation could expand its jurisdiction that's given under the statute, but I think it can determine when that jurisdiction starts and when it ends. And, again, this isn't applying for a benefit, right? This isn't applying for relief from removal. This is the analog to an indictment, right? This is saying the case is starting now. And what the rulemaking says is this regulation was intended to take into account the agency's resources, that at that point, INS, which was a part of the Department of Justice, before it could have jurisdiction start in immigration court, it would need to have the prosecutors necessary, have the resources available, determine which court it should be in. And so that's why they have — it allows the service, now today DHS, to actually be the one that files it in immigration court. And that's what vests jurisdiction there in immigration court. Let me ask you about — do you want to go ahead? I just want to kind of be clear here that the reason I think you have a lot of merit in the way the statute reads clean, so why have you been losing in all of the other circuits, that, as I understand it, your fellow actually got noticed by the supplement which said, you know, you should appear in this time and this place, and that that is good enough to make that jurisdiction, if you want to say vest, if you want to say continue, that is a practical matter, that's what did it. And am I right that because of the way the service has operated, if your argument succeeds, effectively every removal proceeding in the country has to start over because they're all out of jurisdiction? Is that fair? Your Honor, I would — Or virtually every. I would say the parade of horribles that the agency identifies in footnote 7 of the brief misunderstands and underestimates their power of notice and comment rulemaking. When Congress leaves open questions — No, I know they can fix it for the future, but I'm just saying, isn't that a fair reality of the way they have operated? And not to say, you know, there's fiat iustitia ruat caulem, you know, let the heavens fall, but the alternative is to say that when you actually got notice of the actual hearing that you're going to have, that we'll call that vesting jurisdiction. And that's what these other circuits have been saying. I agree that's what the other circuits have been saying. And I think it defies the idea that 1229 is unambiguous under Pereira, period. And keep in mind, people that have been granted relief, the agency can't appeal those decisions, so that group of decisions is not going to be reopened. I also believe that the agency has the ability to engage in notice and comment rulemaking and fix jurisdictional defects. If it gets to decide when jurisdiction vests, then it can do so now. And we've seen the current executive use the exceptions to the Administrative Procedure Act to initiate rules that start the day they file them on the Federal Register. This happened this past week with the expansion of a thing we call expedited removal. It was not a notice of proposed rulemaking. It was a final rule issued and allowed comments for an additional 60 days. But the rule went into effect. The agency has to be able to do that. But again, that's only prospective. I mean, they can't retroactively. If you're right, can they retroactively say jurisdiction vested because of some other reason? Well, Your Honor, I think that under their current regulation, jurisdiction vests when they're served with a notice to appear. I don't know why they couldn't issue proper notices to appear to people in removal proceedings currently. And that would solve the jurisdictional question. This is, we also live in a world post-Kaiser v. Wilkie. We don't get to look at their interpretation of 103.14a anymore. We look at it. It's unambiguous. So any interpretation thereof is not entitled to any deference. Do you say that that regulation, 1003.14, is that, you say that's that vest subject matter jurisdiction, or you say that's a claims processing rule? I would say it's a jurisdictional rule, Your Honor. And I would say that because So the thing that I don't understand about that argument is, you know, the Supreme Court has told us that Congress vests jurisdiction. And, you know, the statutes clearly say the immigration judge shall have authority to decide these cases. So I don't, I don't, I think your argument would be more helpful to me if you assume that it's a claims processing rule, and then what happens to your case? Your Honor, if this is a claims processing rule, then the court had jurisdiction and we move on to the asylum argument, which I think the BIA here has interpreted the nexus requirement far too narrowly. With my time kind of running out, I'll just point the court to a very recent 11th century case called Diaz-Rivas v. the Attorney General, 769 Federal Appendix 748. It was a split decision. Judge Jordan wrote an excellent dissent explaining the proper scope of the nexus requirement, and I would urge the court to adopt her analysis in that case. Thank you, Your Honor. Yes. Can I ask one question? You said if it's a claim processing rule, we move on to the merits, and is that because your Pereira issue is forfeited because you didn't raise it earlier? That's right, Your Honor. Okay. Good morning. We've kept your office busy this week, haven't we? Yes. Good morning, Your Honor. I guess we've had somebody from your office every day this week, and there are two of you here today? Yes, Your Honor. Well, thank you. I have found your office's work to be very helpful, so we're glad you're here. Thank you, Your Honor. May it please the court, Remy Darucha Afodu, representing the United States Attorney General. The petition for review should be denied. As Opposing Counsel has said, he has conceded that the statute really does not speak to the immigration court's jurisdiction in this case, and that we have to look at the regulations to figure out what the court's jurisdiction is. Well, but see, that seems a problem for the reasons that Judge Martin has previously mentioned and I think Opposing Counsel also agreed with, and that is that the agency can't determine its own jurisdiction. That's something for Congress to do. Yes, Your Honor. I agree with that, that the agency cannot determine its own jurisdiction, and it did not determine its own jurisdiction in that part of the regulation. The regulation, that is, did not state that it basically describes the immigration court's divesting of jurisdiction in the immigration court with the serving of the charging document. What actually gives the immigration court the adjudicatory authority and jurisdiction is HUSC Section 1103G1, and that is where the immigration court's jurisdiction derives from. In this case, Petitioner's Notice to Appear was not defective under the regulations, and the immigration court properly asserted jurisdiction over Petitioner's proceedings. The regulations did not require that the Petitioner's NTA include the time and date of his initial hearing for proceedings to commence, and that is the critical issue in this case. I'm sorry, I want to just back you up a little bit, if you don't mind. Yes, Your Honor. We had asked some questions, and I'd like to ask if you could address those. None of the other courts have addressed this issue in this way, and I wonder if you could give us your thoughts on why it is that 1229, parentheses, A, is not unambiguous about the fact that the Notice to Appear that is defined in that section governs removal proceedings. The government's position on that very first question is that the language and scope of Section 1229 is clear and unambiguous. That section of the statute addresses the notice requirements that an alien who has been placed in removal proceedings under Section 1229A must receive. It is completely silent on the immigration court's jurisdiction. And I agree with that, except that if it says, that provision says, in removal proceedings under 1229A, Notice to Appear, and then it defines Notice to Appear. So my question is, why doesn't the definition of Notice to Appear that appears in 1229, parentheses, A, govern removal proceedings in 1229A? And if you agree that it does, then doesn't Perera require us to stick to the definition of Notice to Appear that it determined was unambiguous in 1229, parentheses, A? And then the question is, how does the regulation fit into all of that? Does that make sense? I know I've asked a lot. Yes, it does make sense, Your Honor. The Notice to Appear in 1229A serves the function of providing notice to the alien or the petitioner about the removal proceedings. Doesn't it initiate the proceeding, the removal proceeding? I mean, that's the name of the statute, Initiation of Removal Proceedings. Yes, Your Honor. It does talk about initiating removal proceedings, but the core issue in 1229A is the fact that it addresses the notice that needs to be provided to the alien for removal proceedings to commence, whereas under the regulations. So let's talk about the regulations. So the 8 CFR 1239.1 reiterates the language of the statute when it says that the removal proceeding is, quote, commenced by the filing of a Notice to Appear, right? Yes, Your Honor, but it talks about the Notice to Appear as a charging document. That regulation doesn't. In that section of the regulation. That doesn't. And didn't the Supreme Court in Pereira say that a Notice to Appear can have more than one central function? And yes, it's a charging document, but it rejected the government's argument that it was limited to a charging document. And it said that if it did not have to include the time and date of appearance, then what could happen is the Notice to Appear could be issued and years later, the government could give one day's notice of when the hearing is. And that would basically disallow the person to be able effectively to retain counsel for that hearing. And that would be a serious problem. So it couldn't be construed that way. It seems like that same problem would apply here. Okay. The Notice to Appear is one document fulfilling two different purposes. Under the statute, the Notice to Appear fulfills the notice requirements that an alien must get in order for removal proceedings to commence. On the other hand, under the regulations, the Notice to Appear has to be filed with the immigration court for jurisdiction to So on one hand, we're talking about notice requirements. And on the other hand, we're talking about a charging document that vests jurisdiction with the immigration court when it is filed there. So the notice requirement... I'm sorry. How do we get to it vesting? What makes it vesting? What provision are you relying on for the idea that it vests jurisdiction with the court? Well, that is under the regulation under Section 1003.14. That is where it says that jurisdiction vests with the immigration court. And it says in proceedings before an immigration judge commenced, which goes back to the statute that says it commences upon... I mean, the initiation of the proceeding happens when that Notice to Appear issues, which includes the diamond location. Yes, Your Honor. But 1229 is completely silent on the immigration court's jurisdiction. It does not address the court's jurisdiction at all. Basically, it discusses the conduct of removal proceedings and addresses the form and the substance of such proceedings. It is also completely silent. Excuse me. So 1229A says an immigration judge shall conduct proceedings. Do you think that's silent on jurisdiction? Yes, Your Honor. It is silent on the jurisdiction. You get no authority. Immigration judge gets no authority from that. Pardon me, Your Honor? The government's position is that the immigration judge gets no authority to hear the case from 1229A. Our position is that 1229 is completely silent on immigration court's jurisdiction. So that would be a yes? It does not give the immigration judge authority to hear the case? Oh, it does. It discusses the conduct of removal proceedings and addresses the form and substance of such proceedings. 1003G1, HUSC 1003G1, is what gives the Attorney General the authority. It gives the adjudicatory authority to make the regulations that give the — that explain what the immigration judge, you know, the proceedings in immigration court. But 1229 is clear and unambiguous, Your Honor. It does not discourse the court's jurisdiction. We have to look at the regulations, Your Honor, to see when the jurisdiction vests with the immigration court. Again, you know, I'm just — we got to write this, and so I'm just trying to be sure I understand the government's position. I mean, when I read 8 CFR 1003.13, I mean, it's really, you know, for proceedings after April 1, 1997, it uses the same terms as the statute. It says that, you know, it refers to the notice of appear to appear, and then the service requirements are the same, exactly the same as the statute. It is very, very similar, but there are differences. No, it's identical. But there are differences, Your Honor, because if you look at the regulation, it does state specifically that the time, date, and place of a hearing may be included only where practicable, and that is once — Well, see, that's where I'm with Judge Rosenbaum. You know, how does the agency get to relieve itself of the obligations of the statute? The agency was not relieving itself of the obligations under the statute. The statute says a notice requires — Well, the statute says time and location. Regulation says where practicable. The regulation was talking about the charging document. Well — The statute was talking about the notice requirement that needs to be fulfilled for due — to satisfy the due process requirements of notice to an alien. I hear — I hear what you're saying, but here's the problem, and maybe that would be okay before Pereira. But then the Supreme Court in Pereira said notice to appear is a definition in 1229 paren a. So that's where the problem is. If notice to appear in 1229 paren a is a definition, as the Supreme Court said it is, and, of course, we're bound by, then how can it not be a definition — I mean, how can it not be a definition in 1229 paren a? Because in 12 — in the regulation, it is talking about a charging document, which is also called a notice to appear. In fact, the Sixth Circuit has — did state in Santa Santa's that it may actually be a misnomer for the — for the regulation to refer to the charging document as a notice to appear. But in this case, a notice to appear serves both purposes. It serves the purpose of the statute providing notice to the alien and also serving as a charging document in the immigration court. Let me ask you this. Is — in your view, does the charging document now initiate the proceeding, the removal proceeding? Well, the charging document vests jurisdiction in the immigration court. That's not what I'm asking. Yes. Does the removal proceeding only begin when you file this — the charging document that gives the time and location? Yes, Your Honor. It only starts then. Filed with the immigration court. That is what vests the immigration court with jurisdiction. To put it differently, can the — can the immigration court actually do anything affecting the alien until the date and time notice is given? Well, the regulations clearly state that the immigration court will provide that information once, you know, the NTA is served in — is filed in immigration court. And that was what was done in this case. The — But you just said proceeding doesn't even start based on the notice to appear. It doesn't even start until you send this second document that says the time and place. That's — that's what I understand your — Well, the — the regulation states specifically that jurisdiction vests with the immigration court, and then the court sends the — the information about the time, place of the  In between those two times, the immigration court doesn't do anything that affects the alien. No, the immigration court can't, because that notice requirement has to be satisfied. And that notice of hearing satisfies the notice requirement under Section 1229A, which does not state that it should be done in only one document, that that, you know, notice can be provided in only one document. I still have some confusion about the regulation. You're saying that the — in 1239.1, right, in 1239.1, where it says every removal proceeding conducted under Section 240 of the Act to determine the deportability or inadmissibility of an alien is commenced by the filing of a notice to appear with the immigration court, that notice to appear as used there does not mean the same thing as 1229 perene, right? Yeah. The notice to appear under the regulation is a charging document. Yes. I understand what you're saying, I think. But then here's the next problem, right? Because Section B of that very same regulation says service of notice to appear. Service of the notice to appear shall be in accordance with Section 239 of the Act, and that is the same section that defines notice to appear with time and place in it and says, you know, service by mail under the section shall be sufficient, blah, blah, blah. So it seems like it's using notice to appear — I mean, it seems like it's redefining notice to appear as it's defined in 1229 perene. No, Your Honor, it's not redefining the notice to appear. It's describing the notice to appear under the regulations as a charging document. So notice to appear has two different meanings under the government's law. I wish we could say that, Your Honor. Under the statute, it is a notice requirement to the alien, whereas under the regulations, it is one of the definitions of a charging document. Can I just give you one more chance? So notice to appear in the statute is about initiating the removal proceedings, and then in the two regulations that we've been talking about, it also refers to a document that commences or initiates the removal proceeding, but you're saying that those are not the same documents. In reality, it is one document, but it serves two different purposes. It is a charging document under the regulations, and it serves the function of a notice under the statute. But what if it doesn't contain the information required by the statute? I'm sorry, Your Honor? But it doesn't contain the information required by the statute? It does contain the information required by the statute to the extent that a notice of hearing is sent out later if it is not included — if the information included in the NTA is not included in the notice of hearing. To that extent, the notice of hearing cures any defect in the notice to appear. And that — the government's position is that even if the petitioner's NTA was defective, the notice of hearing mailed by the immigration court cured that effect. And every circuit court that has ruled on this issue, including this court, in an unpublished decision, has said that, you know, the defective NTA may be cured with a subsequent notice of hearing, except, of course, the Seventh Circuit. All right. Well, your time is up. If you'd like to wind up your argument now, that would be great. Yes. Okay, Your Honor. Yeah. The regulation does not specify what information was contained in a charging document at the time it is filed with the immigration court. And the regulation also does not mandate that the document specifying the time and date of the initial hearing, that it should specify it. And so the two-step process — All right. No, no, no. We're not going to do a two-step process. You need to wind it up. Okay, Your Honor. Thank you. And even if the NTA was defective, Your Honor, the defect could not be cured. It's here for Section 1003.14. It's not jurisdictional, but it is a claims possession rule. And the alien must properly raise the issue or risk forfeiting it. All right. Thank you. He did not raise the issue, so he's forfeiting it. Thank you for your argument. Thank you, Your Honor. Counsel, would you like to say anything about the merits of the case? Yes, Your Honor. Again, I would point this Court to the unpublished decision I cited earlier, where it indicates that when you're looking at the nexus requirement for an asylum case, it's at least one central reason. That unpublished case recognizes the Eleventh Circuit doesn't have a published precedent on that, but it goes through the litany of circuit courts that have some general rules that tend to agree. That is that you can have a — a prosecutor can have many different motives, and as long as one of those motives is based on a protected ground and it's not insignificant, it's not tangential, it's somehow central, that that can be sufficient. And here, the BIA determined that my client's family — that was our membership in a particular social group of his family, of his father-in-law — was not one central reason. The facts, however, belie that, in that the catalyst for the cartel coming at my client and persecuting them was his relationship to his father-in-law. He had been living a pretty comfortable life in Mexico for years, and then all of a sudden they come and persecute him, not because of his well-off life, but because of his family relationship to his father-in-law. So it was the catalyst of the persecution, and it also was his salvation from the persecution, because every time they extorted him, they said, well, if you just tell us where your father-in-law is, we'll stop. And so — It does seem internally inconsistent, the BIA order. I mean, in one paragraph they say the respondent's relationship to his father-in-law is the reason for the harm and extortion he experienced, and then in the very next paragraph they sanction the immigration judge finding that any motive to harm the respondent based on his family status was at most incidental. It's very problematic here, and I do think even under the deferential standard, the record compels a conclusion that his family was at least one central reason, and — I take it there was no evidence or indication that they were targeting the rich people who live next door on either side. That's right, Your Honor, and again — They were just doing fair debt collection, right? I mean, they had a debt they wanted to collect from this particular person. The Diaz-Rivas case even highlights this importance of what starts the persecution and what can end the persecution, and in that case the facts were flipped in that the family reported a kidnapping, and then they claimed, well, they were being attacked because of their family group, and the court said, no, no, no, no, no. They knew you were a family before, and they didn't persecute you. They only persecuted you after you reported to the police, and so it's a perfect inverse of our case here, so I'd really urge the court to look at that and use this as an opportunity to join the rest of the circuits in, frankly, a evolution of case law saying that the BIA continually interprets nexus too narrowly. And, counsel, am I right if we do get to the merits and we agree with you on this point, we would still remand because the court would then be given the right law and they would have to decide other issues. Is that right? I see my time is up, Your Honor, if I may. That's exactly right. I think it would be a remand with instructions consistent with opinion providing a proper definition of nexus for the Eleventh Circuit. And I know my time is up, but may I address the Pereira argument in just one point to address Judge Rosenblatt? You got two sentences. I got two. The government's concession on your first question changes everything. That was one sentence. Very good. Thank you, Your Honor. Thank you.